UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACKLYN ELMENDORF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19 CV 2479 JMB |
| | ) | |
| LINCARE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Lincare Inc. for summary judgment pursuant to Rule 56, Fed. R .Civ. P. Plaintiff Jacklyn Elmendorf has filed a response in opposition and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff Jacklyn Elmendorf[1] was employed by defendant Lincare as a customer service representative from March 8, 2017, until she was terminated on June 15, 2018. She filed suit in the Circuit Court of Lincoln County, asserting that defendant terminated her employment based on her gender and her pregnancy, in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 *et seq.* Defendant timely removed the matter, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. Defendant now seeks summary judgment, arguing that plaintiff cannot establish that her gender and pregnancy were the motivating factor for her termination.

---

[1] During her employment, plaintiff's name was Jacklyn Gassel. She has subsequently married and changed her name.

I.     **Background**[2]

Defendant Lincare Inc. supplies patients with prescribed respiratory equipment and services. Plaintiff was employed at the Lincare office in Troy, Missouri. As the customer service representative, plaintiff was responsible for writing up orders from medical offices, verifying a patient's insurance, ensuring that all paperwork for billing was completed, and scheduling delivery of respiratory equipment to patients. In addition, she answered the telephones and handled walk-in patients.

The decision to terminate plaintiff's employment was made by Dana Wysocky, plaintiff's best friend. Ms. Wysocky had started her employment at Lincare as the customer service representative and, when she became a sales representative, she recommended plaintiff as her replacement. Plaintiff began in March 2016 and Ms. Wysocky became the center manager – and plaintiff's supervisor – in November 2016.

---

[2] Defendant submitted a Statement of Uncontroverted Material Facts (SUMF) [Doc. # 24], as required by this district's local rules. See E.D. Mo. L.R. 4.01(E) ("Every memorandum in support of a motion for summary judgment must be accompanied by a document titled Statement of Uncontroverted Material Facts"). In her response to the SUMF, plaintiff largely admitted the facts defendant cites. Plaintiff's Response to SUMF [Doc. # 28]. The only facts that she disputes relate to testimony at the hearing on her claim for unemployment benefits. See Pl. Resp. to SUMF at ¶¶ 38–42. At that hearing, plaintiff's supervisor, Dana Wysocky, testified that the "last straw" occurred on June 1, 2018, when Wysocky learned that plaintiff failed to return a patient's call despite Wysocky asking her three times to do so. Unemployment Proceedings on Oct. 22, 2018 at 7–10 [Doc. # 24–7]. Defendant argues that plaintiff's denial of these facts is inadequate because she does not cite supporting evidence in the record, as required by Local Rule 4.01(E) ("The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies."). More significantly, a review of the transcript shows that plaintiff did not actually dispute Ms. Wysocky's testimony regarding the events of June 1, 2018. Id. at 28 (answering in response to question whether she could recall the events in question, "Honestly, no, but I can't say 100 percent"). In ruling on defendant's motion, the Court has not relied on the purported events of June 1, 2018.

On September 7, 2017, Ms. Wysocky issued plaintiff a "documented verbal warning," as a follow-up to a meeting the previous day.³ [Doc. # 24-3]. The document explained that Ms. Wysocky covered plaintiff's work on September 5th. In the course of the day, she encountered two patient orders that had been approved by the insurance company but that plaintiff failed to properly document. Despite "several counseling sessions," plaintiff failed to follow specific "processes and procedures" developed to ensure that patient orders were timely and efficiently processed.⁴ Plaintiff's failure to adhere to these procedures resulted in "poor time management, delays in patient care, lost items, and increased calls from patients or providers asking about the status of orders." In summary,

> [plaintiff's] actions demonstrate disregard for [Wysocky's] directives and violate the following Lincare Major Infractions:
>
> #9 — Failure to discharge assigned job duties in a satisfactory professional and/or efficient manner.
>
> #15 — Substandard workmanship, negligence, or inefficiency during the performance of one's duties.

The document warned plaintiff that she was subject to "further corrective action, up to and including employment termination" unless she demonstrated "immediate and sustained in improvement." Plaintiff promised to do better. Dana Wysocky Deposition at 35 [Doc. # 24-2].

---

³ The document was drafted by Lincare's human relations department based on information Wysocky emailed to them. Wysocky Dep. at 33-34.

⁴ The document identified seven specific deficiencies in plaintiff's performance. Plaintiff acknowledges two of the seven: failing to timely submit set-ups and not using her cell phone during work hours. Plaintiff's Response to Statement of Uncontested Material Facts ¶ 8 (Pl. Resp. to SUMF) [Doc. # 28]. She testified at deposition that she did not agree with the other five. Plaintiff. Dep. at 84-85. Despite her disagreement, she did not formally contest the verbal warning, as provided for by Lincare's employee handbook. SUMF at ¶ 10.

3

Plaintiff became pregnant in November 2017.  She told Ms. Wysocky in December 2017 and her coworkers on January 9, 2018.[5]  Plaintiff's Deposition at 77 [Doc. # 24-1].  On March 19, 2018, Wysocky placed plaintiff on probation for 60 days.  SUMF ¶ 13; Probation Document [Doc. # 24-5].  According to the document issued to her on that date, plaintiff had failed to improve her performance following her verbal warning.  In particular, she failed to "batch up set-ups" every week, and a stack of set-ups from December had been found on her desk.  Plaintiff was also not using a checklist Wysocky gave her for completing orders and Wysocky received daily calls from patients asking about the status of their orders or complaining that plaintiff did not return their calls.  In addition, she was not running insurance verifications in a timely fashion or following up on unpaid accounts.  She continued to use her cellphone during work time.  After two years in her job, she remained disorganized and continued to ask the same questions.  Plaintiff testified that she agreed with several, although not all, of the issues identified in the probation document.  Pl. Dep. at 109.  Plaintiff would be removed from probationary status if she achieved and maintained an acceptable level of performance.  Plaintiff's failure to meet expectations either during or after the probation period would result in her termination, without further intervention.

The document included a 9-point action plan designed to help plaintiff bring her performance to an acceptable level, including getting her filing under control in the next 30 days, following up on unpaid accounts throughout the week, using the checklist to process new orders,

---

[5] Coworker Brad Perkins told plaintiff that she barely knew the father of the baby and "should consider [her] options."  Plaintiff understood Perkins to mean that she should terminate her pregnancy.  Id.  Although Perkins had previously been the center manager, he had no supervisory authority over plaintiff at this time. In January 2018, plaintiff submitted a weight restriction from her physician, limiting her to lifting no more than 20 pounds.  Id. at 95.  Plaintiff testified at deposition that Wysocky told her that she had lifted during her pregnancies and that there was no reason she couldn't lift more than 20 pounds.  Id. at 100.  Although no one at Lincare ever told plaintiff that they would not honor the weight restriction, she frequently had to lift equipment that weighed more than 20 pounds.  Plaintiff does not argue that these incidents show discriminatory intent.

4

returning patient phone calls in a timely manner, and getting her desk and paperwork under control. Her progress on the plan would be reviewed every Friday. Every Thursday, plaintiff was to give Wysocky a clear, concise, logical summary of her progress on the action plan. Wysocky and plaintiff both testified that they did not meet every Friday. Pl. Dep. at 107; Wysocky Dep. at 42. Plaintiff did not recall that she ever gave Wysocky a weekly summary. Pl. Dep. at 107-08. Wysocky never told plaintiff during the probationary period that her performance had not adequately improved. Plaintiff's Statement of Additional Uncontroverted Facts (Pl. SUMF) ¶ 7 [Doc. # 28 at 10-12]. The 60-day probation period expired without formal review or comment. Pl. Dep. at 105.

Approximately two weeks before plaintiff was terminated, district manager Josh Bennett asked plaintiff whether she planned to return to work after maternity leave. She responded that she would return because she needed the health benefits. Id. at 132-35. Plaintiff testified that Wysocky and Bennett both told her she should consider staying home with her baby because childcare was expensive. Id. at 137. Plaintiff's coworkers had made similar comments at other times throughout her pregnancy. Id. at 138-43.

On June 8, 2018, Ms. Wysocky requested termination paperwork for plaintiff. Email chain [Doc. # 24-6]. In her request, Wysocky stated that plaintiff's performance initially improved after she was placed on a 60-day probationary period, but that she had not maintained that improvement.[6] Ms. Wysocky specifically identified plaintiff's failure to complete daily checklists after the first week of probation, despite two reminders that they were not optional. In addition, Ms. Wysocky found an unscanned setup erroneously placed in a stack of scanned setups. Plaintiff

---

[6] Ms. Wysocky incorrectly stated that plaintiff's probationary period began in May, rather than March, 2018. Despite this error, the termination memorandum drafted for Ms. Wysocky stated the correct date her probation started. See Termination Memorandum [Doc. # 24-8].

5

had not "pulled" the insurance or completely entered the patient's information in the system. Ms. Wysocky repeatedly spoke to plaintiff about the procedures for writing up orders and made her a checklist to attach to each order, but plaintiff "just will not do what I ask." Plaintiff's failure to return calls and follow up with patients caused delays in getting them set up. Id.

On June 13, 2018, Ms. Wysocky informed plaintiff that her employment was terminated. Termination Memorandum [Doc. # 24-8]. The memorandum states:

> You were placed on probation with an Action Plan on March 19, 2018 because you were not performing the duties and responsibilities of the position of Customer Service Representative to meet the company's standard. Since that time your performance has not made significant progress towards achieving the standards set forth in the Action Plan. Two of the requirements were to use the checklists you had been provided and turn them in daily and return patient phone calls timely. You are still not turning the checklists in to me daily and I have continued to receive patient complaints because you had not returned their phone calls.
>
> This type of behavior is a violation of the plan and the following Lincare Major Infraction:
>
>> #15 — Substandard workmanship, negligence, or inefficiency during the performance of one's duties.
>
> Consequently, your employment is being terminated effective immediately.

Plaintiff testified that she "begged" Wysocky not to terminate her because she could not afford to lose her job and benefits. She testified that Wysocky told plaintiff that she "needed to take this time to focus om myself and the health of my baby." Pl. Dep. at 120.

Additional facts will be included as necessary to address the issues.

**II.     Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute

6

is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

### III. Discussion

Plaintiff brings claims of gender and pregnancy discrimination pursuant to the MHRA. A 2017 amendment to the statute changed the standard used in assessing claims of discrimination under the MHRA. Bram v. AT&T Mobility Servs., LLC, 564 S.W.3d 787, 794 (Mo. Ct. App. 2018). Prior to the amendment, "an employer violated the MHRA if, in taking an adverse employment action, the employee's protected status contributed in any way to the employer's decision to take the adverse action." Id. (emphasis in original, citations omitted). Following the amendment, an employer violates the MHRA if the employee's protected status was the motivating factor in an adverse employment action. Id.; see also § 213.010(2), Mo. Rev. Stat. 2017. A "motivating factor" is one that "actually played a role in and had a determinative influence on plaintiff's discharge." Crossland v. Hy-Vee, Inc., No. 2:18-CV-04215-NKL, 2019 WL 5847844, at *3 (W.D. Mo. Nov. 7, 2019) (quoting Mo. Approved Jury Instr. (Civil) 38.05 (7th ed); citing

7

Mo. Rev. Stat. § 213.010 (19)).  The new standard is analogous to the one used in employment discrimination claims under federal law and imposes a higher burden upon the employee than the prior "contributing factor" standard.  Bram, 564 S.W.3d at 794–95.

"[A] plaintiff in an employment discrimination case under the MHRA may avoid summary judgment by following the McDonnell Douglas framework *or* by presenting direct evidence of discrimination."  Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 965 (8th Cir. 2006) (emphasis in original).  Defendant argues that there is no "direct evidence" of discrimination in this case.  Direct evidence shows a "specific link" between discriminatory animus and an employment decision.  Rinchuso v. Brookshire Grocery Co., 944 F.3d 725, 729 (8th Cir. 2019) (citation omitted); see Montgomery v. Gen. Atomics Int'l Servs. Corp., No. 3:18-CV-90-JAJ-SBJ, 2019 WL 6771753, at *6 (S.D. Iowa Nov. 27, 2019) ("Generally speaking, direct evidence must be strong enough to demonstrate discriminatory intent without requiring an inference.")  "Direct evidence cases are rare, but they do exist."  Ramirez-Cruz v. Chipotle Servs., LLC, No. CV 15-4514 ADM/KMM, 2017 WL 3433116, at *6 (D. Minn. Aug. 10, 2017) (citing Simmons v. New Pub. Sch. Dist. No. Eight, 251 F.3d 1210, 1214 (8th Cir. 2001) (decisionmaker's comments that "a woman can't handle [the female plaintiff]'s job" and that the plaintiff was "a woman in a man's job" were direct evidence of sex discrimination); Kneibert v. Thomson Newspapers, Michigan Inc., 129 F.3d 444, 452 (8th Cir. 1997) (decisionmaker's statements that he "had no use for a senior editor" but needed "three young editors" were direct evidence of age discrimination); E.E.O.C. v. Liberal R-II Sch. Dist., 314 F.3d 920, 924–25 (8th Cir. 2002) (remarking that a 70–year–old employee "was too old to drive a bus" was direct evidence of age discrimination)).

Here, plaintiff suggests[7] that Bennett and Wysocky's statements that she consider the cost of daycare in deciding whether to return to work constitute direct evidence of discrimination. However, "[d]irect evidence does not include statements by decisionmakers that are facially and contextually neutral." Aulick v. Skybridge Americas, Inc., 860 F.3d 613, 620 (8th Cir. 2017) (citation omitted) (repeated statement that employer was looking for "a new face" not direct evidence of discriminatory intent). Bennett and Wysocky's statements themselves do not betray any discriminatory animus without a further inference and did not occur in a disciplinary setting. These statements do not constitute direct evidence of discriminatory intent.

In the absence of direct evidence, defendant asserts, the Court must apply the McDonnell Douglas burden-shifting framework. Plaintiff disagrees, arguing that her claim is governed by the Missouri Supreme Court decision in Daugherty v. City of Maryland Heights, 231 S.W.3d 814 (Mo. 2007), which abandoned the McDonnell Douglas burden-shifting framework for MHRA claims. But the 2017 amendment to the MHRA expressly abrogated Daugherty as it "relate[s] to the . . . abandonment of the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." § 213.101.4. Furthermore, "[i]f an employer in a case brought under this chapter files a [summary judgment] motion . . ., the court shall consider the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny to be highly persuasive for analysis in cases not involving direct evidence of discrimination." § 213.010.3; see also Hurley v. Vendtech-SGI, LLC, No. 16-01222-CV-W-ODS, 2018 WL 736057, at *3 (W.D. Mo. Feb. 6, 2018) (noting abrogation of Daugherty). The burden-shifting framework requires the

---

[7] Plaintiff does not argue that she has direct evidence, but rather refutes defendant's assertion that this case is analogous to Quick v. Wal-Mart Stores, Inc., 441 F.3d 606 (8th Cir. 2006). The plaintiff in Quick was criticized for planning to take twelve weeks of maternity leave; in addition, a manager stated that she did not expect the plaintiff to return from maternity leave. The Eighth Circuit rejected the argument that these statements were direct evidence of discrimination.

9

plaintiff to first carry the burden of making a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its decision. Id. at 802–03. If the employer meets its burden, the burden then shifts back to the plaintiff to show the employer's reason was pretextual. Id. at 804.

For plaintiff to establish a prima facie case of discrimination, she must demonstrate that (1) she was a member of a protected class; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) there is "some other evidence that would give rise to an inference of unlawful discrimination." Lampley v. Missouri Comm'n on Human Rights, 570 S.W.3d 16, 24 (Mo. 2019) (quoting Buchheit, Inc. v. Mo. Comm'n on Human Rights, 215 S.W.3d 268, 277 (Mo. App. W.D. 2007)). When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law. Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 886 (8th Cir. 2015) (citing Daugherty, 231 S.W.3d at 818).

Defendant first argues that plaintiff cannot establish that she was qualified for her job, as required by the second element.[8] This element requires plaintiff to show that she is able to perform her job at a level that meets her employer's legitimate expectations. Schierhoff, 444 F.3d at 966 (discussing age discrimination claim under the MHRA). Plaintiff does not dispute[9] that she

---

[8] Defendant also argues that plaintiff cannot establish the fourth element of her prima facie case because she cannot show that her termination was the result of unlawful discrimination and that, even if she could satisfy her prima facie burden, she cannot show that defendant's legitimate nondiscriminatory reason for terminating her was a pretext for unlawful discrimination.

[9] Indeed, the gist of plaintiff's argument is that her inadequate job performance was tolerated, despite her failure to respond to progressive discipline, up until she declared her intention to return to work after taking maternity leave. Plaintiff argues that this is sufficient to establish that her gender and pregnancy were a contributing factor in the decision to terminate her. But, as discussed above, plaintiff must meet the more demanding "motivating factor" standard.

10

displayed performance issues throughout the period beginning in September 2017, when she received a verbal warning, straight through probation in March 2018, until her termination in June 2018. In particular, she concedes that she used her cellphone during work hours and failed to submit set-ups in a timely fashion, as detailed in the 2017 verbal warning. Pl. Opp. Memo. at 5; Pl. Resp. to SUMF at ¶8. Furthermore, she concedes that she did not sufficiently improve her performance to satisfy the standards established by the warning. Pl. Opp. Memo. at 5 ("It is undisputed that plaintiff did not improve after the September letter to meet the standard required by the letter."). Plaintiff also does not dispute that she continued to have performance deficiencies after the verbal warning, as detailed in the March 2018 probation document. Pl. Resp. to SUMF at ¶¶ 25-32. She even concedes that she did not fully comply with the action plan established for the probationary period. Id. at ¶ 23 (plaintiff admits she did not supply weekly summary of her activities). Finally, plaintiff admits that, even after her probationary period, Wysocky received complaints from patients that plaintiff did not return their phone calls. Id. at ¶ 30. Thus, based on the undisputed facts, plaintiff cannot meet the second element of her prima facie case. See Carter v. CSL Plasma Inc., 63 F. Supp. 3d 1034, 1045 (W.D. Mo. 2014) (summary judgment appropriate where plaintiff did not dispute that he had attendance and performance issues and was not meeting employer's legitimate expectations at the time of his termination). Because the Court finds that defendant is entitled to summary judgment based on plaintiff's failure to establish the second element of her prima facie case, it is unnecessary to address defendant's remaining arguments.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Lincare Inc. for summary judgment [Doc. # 22] is **granted**.

11

A separate judgment in accordance with this Memorandum and Order will be entered.

                                                          **/s/ *John M. Bodenhausen***
                                                          JOHN M. BODENHAUSEN
                                                          UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of December, 2020.